UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-21854-Civ-Williams/Sanchez

CLEAR SPRING PROPERTY AND
CASUALTY COMPANY,

    Plaintiff,

v.

ASTONBLUWAVES LLC, and
LA VICTOIRE FIANCE BY
BANK OF CLARK COUNTY,

    Defendants.
_____/

**REPORT AND RECOMMENDATION ON CLEAR SPRING'S MOTION FOR SUMMARY JUDGMENT**

    This matter is before the Court on the Motion for Summary Judgment (ECF No. 74) filed by Clear Spring Property and Casualty Company ("Clear Spring").[1]  In that motion, Clear Spring seeks summary judgment on the basis that Astonbluwaves LLC ("Astonbluwaves") made material misrepresentations in its application for marine insurance and that the insurance policy issued as a result of that application is void *ab initio* pursuant to the maritime doctrine of *uberrimae fidei*.  *Id.* at 2.

    Following a careful review of the parties' filings, the pertinent portions of the record, and the applicable law, and the undersigned being otherwise duly advised on the matter, the undersigned **RECOMMENDS** that Clear Spring's Motion for Summary Judgment, ECF No. 74, be **GRANTED**.

---

[1] United States District Judge Kathleen M. Williams previously referred Clear Spring's Motion for Summary Judgment to the undersigned for a Report and Recommendation.  ECF No. 75.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On or about September 28, 2021, Astonbluwaves, via a broker, submitted an application for a policy of marine insurance for its 2010 85-foot Aicon vessel. ECF No. 73-3. Among other things, the application asked: "Have you or any named operated [sic] been convicted of a criminal offence or pleaded no contest to a criminal action?" *Id.* at 1. Astonbluwaves marked "no" in response to this question. *Id.* The application also asked whether Captain Jason Wessel, the proposed operator of Astonbluwaves' vessel, had any "Violations/Suspensions (including Auto) in the last 5 years." *Id.* Astonbluwaves responded to that inquiry with a null (Ø) symbol. *Id.* Lastly, the application asked whether Captain Wessel had "ever been convicted of a criminal offence or pleaded no contest." *Id.* Astonbluwaves responded "no" to that question as well. *Id.* On September 30, 2021, Astonbluwaves completed and signed a supplemental operator form that once again affirmed that Captain Wessel had never been convicted of, nor pleaded no contest to, a criminal offense. *Id.* at 5. That form also restated that Captain Wessel had no "Violations/Suspensions (including Auto) in the last 5 years." *Id.* Notably, the supplemental operator form included an admonition and disclaimer in large bold letters, located directly on top of the signature line, which stated that the policy was a "NAMED OPERATOR POLICY ONLY" and that "[a]ny misrepresentation in this operator form may render Insurance coverage null and void from inception." *Id.*

Clear Spring subsequently agreed to issue Policy No. CSRYP/206372 (the "Policy"), with effective dates of October 5, 2021, through October 5, 2022, to Astonbluwaves based on the representations set forth in the application. ECF No. 73-2. The Policy states, in relevant part: "This contract is null and void in the event of non-disclosure or misrepresentation of a fact or circumstances material to our acceptance or continuance of this insurance. No action or inaction by us shall be deemed a waiver of this provision." *Id.* at 13.

2

On April 13, 2022, Astonbluwaves' vessel sustained damages as a result of a fire. ECF No. 57 at ¶¶ 12-14; ECF No. 63 at 1 ¶ 2. Following that incident, Astonbluwaves filed an insurance claim under the Policy with Clear Spring. ECF No. 57 at ¶ 18; ECF No. 63 at 1 ¶ 2. Clear Spring, however, subsequently discovered that Astonbluwaves' application for marine insurance misrepresented facts about Captain Wessel. More specifically, Clear Spring obtained documents concerning Captain Wessel's driving record and criminal record that revealed that Captain Wessel had been convicted of driving under the influence of alcohol twice, once in 2000 and again in 2008, after he pleaded no contest to both of those charges, ECF Nos. 73-4, 73-5, and that, in October of 2019, Captain Wessel was issued citations for speeding and for driving with a suspended license, ECF No. 73-6. Astonbluwaves had not previously disclosed Captain Wessel's convictions nor his traffic violations to Clear Spring. *See* ECF No. 73-7 at 9, 12, 38-39, 61-63, 107-09, 111-12; ECF No. 73 at 3 ¶¶ 15-16; ECF No. 86 at 5 ¶¶ 15-16, 12 ¶¶ 40-41. As a result, Clear Spring filed the instant lawsuit in which it seeks declaratory relief that, under the doctrine of *uberrimae fidei* and General Condition L of the Policy, it is not obligated to Astonbluwaves for the damages that its vessel sustained.

## II.   LEGAL STANDARD

"Summary judgment is appropriate when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Luke v. Gulley*, 50 F.4th 90, 95 (11th Cir. 2022) (quoting Fed. R. Civ. P. 56(a)). The Court must view the record and all factual inferences in the light most favorable to the non-moving party and decide whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also, e.g.*, *Luke*, 50 F.4th at 95. The existence of a factual dispute by itself is not enough to defeat a motion

for summary judgment; rather, "the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48. "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case. An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (quoting *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004)); *see also Mann v. Taser Int'l, Inc.*, 588 F.3d 1292, 1303 (11th Cir. 2009) ("For factual issues to be considered genuine, they must have a real basis in the record.") (quoting *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 919 (11th Cir. 1993)).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *See Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). Once the moving party satisfies this burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); it must provide "significant, probative evidence demonstrating the existence of a triable issue of fact," *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc) (quoting *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991)). The mere existence of a "scintilla" of evidence is not enough; there must be sufficient evidence to show that a reasonable jury could return a verdict for the non-moving party. *See Anderson*, 477 U.S. at 252; *see also Shiver*, 549 F.3d at 1343 ("Speculation does not create a *genuine* issue of fact.") (quoting *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005)).

### III.   DISCUSSION

In this case, Clear Spring has moved for summary judgment on the basis that Astonbluwaves' failure to disclose facts regarding Captain Wessel's prior convictions and traffic violations violated the maritime doctrine of *uberrimae fidei*, thereby making the insurance policy

at issue in this case void *ab initio*. Astonbluwaves, on the other hand, argues that the doctrine of *uberrimae fidei* does not void the insurance policy because Clear Spring has failed to establish that Astonbluwaves' misrepresentations were material and affected Clear Spring's decision in issuing the policy.

### A. Choice of Law

As a threshold matter, the Court must determine the law that governs the issues involved on summary judgment. Relying on Provision 11 of the Policy, Astonbluwaves argues that "New York Law and the Second Circuit's application of maritime law will be applied." ECF No. 85 at 6. Provision 11 states, in relevant part:

> It is hereby agreed that any dispute arising hereunder shall be adjudicated according to well established, entrenched principles and precedents of substantive United States Federal Admiralty law and practice but where no such well established, entrenched precedent exists, this insuring agreement is subject to substantive laws of the State of New York.

*See* ECF No. 73-2 at 16.

Despite Astonbluwaves' efforts to avoid application of Eleventh Circuit law in this case, "[m]arine insurance contracts are governed by federal maritime law," *Quintero v. Geico Marine. Ins. Co.*, 983 F.3d 1264, 1270 (11th Cir. 2020), and "[i]t is well-settled that the marine insurance doctrine of *uberrimae fidei* is the controlling law of this circuit," *HIH Marine Servs. v. Fraser*, 211 F.3d 1359, 1362 (11th Cir. 2000).[2] Indeed, the doctrine of *uberrimae fidei* "is 'the controlling federal rule even in the face of contrary state authority,'" *Quintero*, 983 F.3d at 1270 (quoting *Steelmet, Inc. v. Caribe Towing Corp.*, 747 F.2d 689, 695 (11th Cir. 1984), *vacated in part on other grounds*, 779 F.2d 1485 (11th Cir. 1986)), and because the doctrine is a "well established,

---

[2] Astonbluwaves has not disputed in its response to Clear Spring's Motion for Summary Judgment that the doctrine of *uberrimae fidei* is an entrenched federal maritime doctrine that controls in this case. *See* ECF No. 85.

5

entrenched principle[] and precedent[] of substantive United States Federal Admiralty law," ECF No. 73-2 at 16, New York law does not apply under the terms of the policy provision upon which Astonbluwaves relies.

Moreover, notwithstanding Astonbluwaves' arguments, the Second Circuit and New York state law, like the Eleventh Circuit, recognize that the federal doctrine of *uberrimae fidei* applies to marine insurance contracts. *See, e.g.*, *Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.*, 822 F.3d 620, 633 (2d Cir. 2016) ("Under federal law, a marine insurance contract is subject to 'the federal maritime doctrine of *uberrimae fide* [sic], or utmost good faith.'") (quoting *Folksamerica Reinsurance Co. v. Clean Water of N.Y., Inc.*, 413 F.3d 307, 310 (2d Cir. 2005)); *see also Am. Home Assur. Co. v. Masters' Ships Mgmt. S.A.*, No. 03 Civ 0618(JFK), 2004 WL 1161223, at *5 n.1 (S.D.N.Y. May 24, 2004) ("It is worth noting that the doctrine of utmost good faith would still apply were New York state law to be controlling because New York applies federal maritime law to all maritime cases. As such, the doctrine is an established part of New York case law.").[3]

Accordingly, the federal doctrine of *uberrimae fidei* governs in this case.

### B. Uberrimae Fidei

"[T]he *uberrimae fidei* doctrine requires an insured to 'fully and voluntarily disclose to the insurer all facts material to a calculation of the insurance risk,' and '[t]he duty to disclose extends to those material facts not directly inquired into by the insurer.'" *Quintero*, 983 F.3d at 1271 (quoting *Fraser*, 211 F.3d at 1362). Indeed, "[t]he central principle of *uberrimae fidei* . . . is that

---

[3] Astonbluwaves' efforts to invoke New York insurance law principles that run counter to the federal maritime doctrine of *uberrimae fidei*, *see, e.g.*, ECF No. 85 at 13-14 (seeking to estop Clear Spring from voiding policy under the *uberrimae fidei* doctrine due to asserted delay) are unavailing. *See, e.g.*, *Fraser*, 211 F.3d at 1362 n.2 ("[U]*berrimae fidei* does not permit the use of the principles of waiver and estoppel to provide coverage where there has been a material misrepresentation on the application.") (quoting *Certain Underwriters v. Giroire*, 27 F. Supp. 2d 1306, 1310 (S.D. Fla. 1998)).

the *insured* bears the burden of full and voluntary disclosure of facts material to the decision to insure." *Fraser*, 211 F.3d at 1363. Insurance applicants are accordingly required to "voluntarily and accurately disclose to the insurance company all facts which might have a bearing on the insurer's decision to accept or reject the risk." *Great Lakes Ins. SE v. Chartered Yachts Miami LLC*, __ F. Supp. 3d __, Case No. 20-25046-CV-WILLIAMS, 2023 WL 5625729, at *4 (S.D. Fla. Jun. 7, 2023) (quoting *Certain Underwriters at Lloyds, London v. Giroire*, 27 F. Supp. 2d 1306, 1311 (S.D. Fla. 1998)). "This disclosure includes all material facts that are 'within or ought to be within, the knowledge of one party, and of which the other party has no actual or presumptive knowledge.'" *Quintero*, 983 F.3d at 1271 (quoting *Steelmet, Inc.*, 747 F.2d at 695)); *see also Fraser*, 211 F.3d at 1363 ("[T]he law has placed the burden of good faith disclosure with the person in the best position to know all the facts: the insured.").

"The doctrine of *uberrimae fidei* requires the insured to exercise the 'highest degree of good faith' in entering a marine insurance contract because 'the underwriter often has no practicable means of checking on either the accuracy or the sufficiency of the facts' that the insured furnishes to the insurer before the insurer accepts the risk and sets the policy's conditions and premiums." *Chartered Yachts Miami LLC*, 2023 WL 5625729, at * 4 (quoting *Fraser*, 211 F.3d at 1362)). Thus, "an insured's material misrepresentation to an insurer renders a marine insurance policy void *ab initio*." *Quintero*, 983 F.3d at 1271 (citing *AIG Centennial Ins. Co. v. O'Neill*, 782 F.3d 1296, 1303 (11th Cir. 2015)).

"[M]ateriality in the marine insurance context is broadly defined as anything that could influence the insurer's evaluation of the risk presented by the insured." *Fraser*, 211 F.3d at 1363-64. Materiality, moreover, is examined "from a reasonable insurer's perspective, asking whether a particular fact 'could possibly influence the mind of a prudent and intelligent insurer in determining whether he would accept the risk.'" *Quintero*, 983 F.3d at 1271 (quoting *Kilpatrick*

*Marine Piling v. Fireman's Fund Ins. Co.*, 795 F.2d 940, 942-43 (11th Cir. 1986)). "A misrepresentation is material if it might have a bearing on the risk to be assumed by the insurer." *Fraser*, 211 F.3d at 1363 (quoting *Northfield Ins. Co. v. Barlow*, 983 F. Supp. 1376, 1380 (N.D. Fla. 1997)).

Additionally, like the *uberrimae fidei* doctrine, General Condition L of the Policy provides that the "contract is null and void in the event of non-disclosure or misrepresentation of a fact or circumstances material to our acceptance or continuance of this insurance. No action or inaction by us shall be deemed a waiver of this provision." ECF No. 73-2 at 13. Considering that General Condition L essentially sets forth the same standard for voiding a marine insurance policy as does the *uberrimae fidei* doctrine, other courts in this district have applied the two interchangeably. *See Clear Spring Prop. & Casualty Co. v. Bluewater Adventures of Sarasota*, No. 22-CV-60554, 2022 WL 18027821, at *3 (S.D. Fla. Dec. 6, 2022) ("[T]he language in General Condition L of the Policies embodies the doctrine of *uberrimae fidei* and therefore principles of the same apply to the instant action as a matter of law.") (quoting *Great Lakes Ins. SE v. Sunset Watersports, Inc.*, 570 F. Supp. 3d 1252, 1264 (S.D. Fla. 2021)).

Thus, for Clear Spring to prevail on summary judgment, it must establish two elements: (1) that Astonbluwaves made misrepresentations and (2) that those misrepresentations related to a material fact.

### 1. *Misrepresentation*

Astonbluwaves made several factual misrepresentations to Clear Spring about Captain Wessel's criminal history and driving record in its application for marine insurance. In both the marine insurance application and in the supplemental operator form, Astonbluwaves represented to Clear Spring that Captain Wessel had never been convicted of a criminal offense and had never pleaded no contest. ECF No. 73-3 at 1, 5. Astonbluwaves further represented to Clear Spring in

8

the marine insurance application and in the supplemental operator form that Captain Wessel had no "Violations/Suspensions (including Auto) in the last 5 years." *Id.* at 1, 5. Captain Wessel, however, was convicted of driving under the influence of alcohol twice, once in 2000 and again in 2008, after pleading no contest to both charges. ECF Nos. 73-4, 73-5. Additionally, in October of 2019, Captain Wessel was issued citations for speeding and driving with a suspended license. ECF No. 73-6. Astonbluwaves, however, did not disclose any of these facts about Captain Wessel's criminal history and driving record to Clear Spring. *See* ECF No. 73-7 at 9, 12, 38-39, 61-63, 107-09, 111-12; ECF No. 73 at 3 ¶¶ 15-16; ECF No. 86 at 5 ¶¶ 15-16, 12 ¶¶ 40-41.

In its response to Clear Spring's summary judgment motion, Astonbluwaves states that it disclosed "all facts known to it" in its application for marine insurance. ECF No. 85 at 8. Specifically, Astonbluwaves states that, because it had "no personal knowledge of the captains' history," it "went to the captain [sic] and provided them the application which the operators completed," and it "then forwarded the information on as it was received." *Id.* at 8-9. Astonbluwaves further asserts that it "did not alter or modify the responses or misrepresent the information he [sic] received." *Id.* at 9. This argument, however, does not shield Astonbluwaves from the effects of the doctrine of *uberrimae fidei*. An insured, like Astonbluwaves, is responsible for any misrepresentations made in its application for marine insurance—regardless of whether another person completed the application on its behalf. *See, e.g.*, *Shoreline Found. Inc. v. New York Marine & Gen. Co.*, No. 20-60191-CIV, 2021 WL 4393082, at *3 (S.D. Fla. Aug. 23, 2021) ("[A]n insurer may void the policy even if the failure to disclose material facts was the result of actions by a person acting on behalf of the actual insured.") (quoting *Great Lakes Reinsurance (UK) PLC v. Atl. Yacht & Marine Servs.*, No. 07-20295-CIV, 2008 WL 2277509, at *3 (S.D. Fla. Feb. 26, 2008)); *see also Quintero*, 983 F.3d at 1271 ("The policy is void even if the insured's misrepresentation was the result of 'mistake, accident, or forgetfulness,' or the insured did not

9

inquire about the particular material fact the insured failed to disclose.") (quoting *Fraser*, 211 F.3d at 1362-63). Thus, Astonbluwaves is responsible for the misrepresentations in the application for marine insurance, even if Captain Wessel completed the portion of the application that pertained to him.

Here, the undisputed evidence clearly establishes that Astonbluwaves misrepresented Captain Wessel's criminal history and driving record in its application for marine insurance.

### 2. *Materiality*

Whether the *uberrimae fidei* doctrine renders the insurance policy in this case void *ab initio* due to Astonbluwaves' misrepresentations depends on whether those misrepresentations were material to Clear Spring's evaluation of the insurance risk, that is, whether the misrepresentations "'could possibly influence the mind of a prudent and intelligent insurer in determining whether he would accept the risk.'" *Quintero*, 983 F.3d at 1271 (quoting *Kilpatrick Marine Piling*, 795 F.2d at 942-43); *see also Chartered Yachts Miami LLC*, 2023 WL 5625729, at *5 (same). Here, the undisputed facts establish that Astonbluwaves' misrepresentations were in fact material.

The insurance application in this case and the supplemental operator form specifically asked Astonbluwaves whether Captain Wessel had been "convicted of a criminal offense or pleaded no contest" and whether he had any "Violations/Suspensions (including Auto) in the last 5 years." ECF No. 73-3 at 1, 5. These questions put Astonbluwaves on notice that Captain Wessel's prior convictions, no contest pleas, and traffic violations were material to Clear Spring and would impact Clear Spring's decision whether to issue an insurance policy to Astonbluwaves and what premium to charge to undertake the risk. Indeed, specific questions in a marine insurance contract serve to establish the materiality of later discovered misrepresentations in response to those questions. *See Chartered Yachts Miami LLC*, 2023 WL 5625729, at *6 & n.11 (recognizing that when an insurance application specifically requires an insured to disclose information about a

10

named operator, that is evidence of the materiality of that fact to the insurer).

The undisputed deposition testimony of Beric Usher, the managing director of Clear Spring's marine yacht underwriting agency, further establishes the materiality of Astonbluwaves' misrepresentations. Mr. Usher testified that if Astonbluwaves had disclosed Captain Wessel's DUI criminal history and driving record, those circumstances (specifically, the existence of more than one DUI conviction) would likely have resulted in a declination of insurance or a declination of a policy allowing Wessel to serve as an operator, and if further investigation of the circumstances surrounding Wessel's offenses had instead resulted in the issuance of an insurance policy, a higher premium would have been charged. ECF No. 78-8 at 39-40. In other words, according to Mr. Usher's unrebutted testimony, the misrepresentations concerning Wessel's DUI criminal history and driving record would have impacted the insurance underwriting determination of whether and under what conditions and premium to accept the risk presented by Astonbluwaves such that insurance would have been declined or the policy terms would have been different. Significantly, "[m]ultiple courts in this district have found that an unrebutted affidavit from this very same underwriter, Beric Usher, suffices to establish the materiality of a misrepresented fact." *Chartered Yachts Miami LLC*, 2023 WL 5625729, at *6; *see also, e.g.*, *Great Lakes Reinsurance PLC v. Barrios*, No. 08-20281-CV, 2008 WL 6032919, at *5 (S.D. Fla. Dec. 10, 2008) (concluding, at summary judgment, that the insureds' misrepresentations were material where the insurer provided an undisputed affidavit from Mr. Usher stating that the insurer would not have issued an insurance policy to the insureds had the insureds not misrepresented facts in its application for marine insurance). Mr. Usher's unrebutted sworn deposition testimony similarly serves to establish the materiality of Astonbluwaves' misrepresentations in this case.

The record in this case, moreover, contains additional unrebutted evidence that Astonbluwaves' misrepresentations were material. Indeed, Clear Spring's underwriting manual,

11

underwriting procedures manual, and past underwriting behavior support Mr. Usher's undisputed testimony. For instance, Clear Spring's underwriting manual states that their "application form asks specific questions about both vessel and operator to enable [Clear Spring] to form a complete picture of the whole risk. These include enquiries as to past criminal conviction and driving records." ECF No. 73-10 at 3. The manual further states that "[Clear Spring] should also not consider offering insurance for anyone with drug or alcohol convictions including driving under the influence of alcohol." *Id.* The only exception set forth in the manual is if "there is an extenuating circumstance and a Director has agreed to [the] offering terms." *Id.* Additionally, Clear Spring's underwriting procedures manual states that, when considering "whether or not to quote any risk," there is a reasonable expectation that "someone who has multiple convictions for DUI [will] present a higher if not unacceptable risk that [sic] someone without," and the manual further advises underwriters to "not consider offering insurance for anyone with drug or alcohol convictions including driving under the influence of alcohol." ECF No. 73-11 at 4-5, 6. Again, the only exception that is contemplated is if "there is an extenuating circumstance and a Director has agreed to [the] offering terms." *Id*. at 6. As for Clear Spring's past underwriting behavior, it demonstrates that when an insured has disclosed DUI convictions, Clear Spring has consistently cancelled, not renewed, or requoted the policy. *See* ECF No. 73-9.[4] Clear Spring's underwriting manual, underwriting procedures manual, and past underwriting behavior thus corroborate Mr. Usher's testimony and demonstrate that information concerning past criminal convictions—

---

[4] Although Astonbluwaves argues that the misrepresentations concerning Captain Wessel's DUI convictions were not material because Clear Spring's historical underwriting data "show a number of instances where multiple dui or substance convictions did not result in a non issuance of a policy but rather it was requoted," ECF No. 85 at 12; *see also id.* at 9, the undisputed record, even as characterized by Astonbluwaves, reveals that such circumstances repeatedly resulted in either a declination of insurance or changed policy terms. In other words, the historical data established that DUI or substance convictions consistently influenced Clear Spring's risk-acceptance determinations.

specifically those involving DUIs, drugs, or alcohol—and driving records are material to the assessment of risk when issuing a marine insurance policy. *See Great Lakes Ins. SE v. SEA 21-21 LLC*, 568 F. Supp. 3d 1318, 1326-27 (S.D. Fla. 2021) (finding that, as a matter of law, the insured's loss history was material where the insurer provided specific, undisputed evidence from its underwriting manual that "it might have considered [the insured's] loss history before offering [the insured] marine insurance coverage").

Significantly, Astonbluwaves' own underwriting expert, Damon Hostetter, does not dispute Mr. Usher's testimony, but instead supports the conclusion that Astonbluwaves' misrepresentations were material. *See* ECF No. 73-13. According to Mr. Hostetter's sworn deposition testimony, when underwriting guidelines state that criminal offenses are material, they are material, ECF No. 73-13 at 68, and if a "question is on the [insurance] application, then it is material," *id.* at 81. He additionally testified that disclosure of criminal offenses, such as two DUIs, would warrant further inquiry by an underwriter when deciding whether to issue an insurance policy. *Id.* at 68, 71, 99. Furthermore, where there is a DUI, "it should be—or potentially be considered in conjunction with the type of business that you [*i.e.*, the insurer's underwriter] are trying to underwrite." *Id.* at 69. Indeed, Mr. Hostetter testified that DUIs "could definitely influence" an insurer "as to whether or not they would agree to insure that particular individual." *Id.* at 98.

A misrepresentation is material if it "could influence the insurer's evaluation of the risk presented by the insured," *Fraser*, 211 F.3d at 1363-64, that is, if it "*might* have affected [the insurer's] decision to insure," *SEA 21-21 LLC*, 568 F. Supp. 3d at 1325 (quoting *Markel Am. Ins. Co. v. Fernandez*, No. 09-20449-Civ, 2010 WL 11602243, at *3 (S.D. Fla. July 20, 2010)); *see also Fraser*, 211 F.3d at 1363 ("A misrepresentation is material if it might have a bearing on the risk to be assumed by the insurer.") (quotation omitted); *Quintero*, 983 F.3d at 1271 (concluding

13

that materiality is determined by examining "whether a particular fact 'could possibly influence the mind of a prudent and intelligent insurer in determining whether he would accept the risk'") (quoting *Kilpatrick Marine Piling*, 795 F.2d at 942-43).

The undisputed facts in this case unequivocally establish that Astonbluwaves' misrepresentations concerning Captain Wessel's criminal history and driving record could have influenced and likely affected Clear Spring's decision to issue the Policy. Those misrepresentations were accordingly material to Clear Spring's evaluation of the insurance risk involved in this case.

Because Astonbluwaves made material misrepresentations in its application for marine insurance, Clear Spring is entitled to have the Policy declared void *ab initio* pursuant to the doctrine of *uberrimae fidei*, and it accordingly has no liability to Astonbluwaves for the damages that Astonbluwaves' vessel sustained.

C. **Astonbluwaves' Counterclaims**

Because the marine insurance policy that is at issue in this case is void *ab initio* under the doctrine of *uberrimae fidei*, Clear Spring is entitled to judgment on the counterclaims that Astonbluwaves has asserted in this case. Here, Astonbluwaves asserted eight counterclaims: two claims for breach of contract concerning the insurance policy, three claims for declaratory judgment concerning the insurance policy, a claim for breach of the contractual obligation of good faith and fair dealing concerning the insurance policy, a claim for equitable estoppel, and a claim for breach of the duty of *uberrimae fidei*. The claims for breach of contract, declaratory judgment, breach of contractual obligation of good faith and fair dealing, and breach of the duty of *uberrimae fidei* are all dependent on the existence of a marine insurance contract between the parties. *See* ECF No. 63 at 6-21, 23-25. In this case, however, there is no insurance contract because, as discussed above, the doctrine of *uberrimae fidei* rendered the Policy void *ab initio* and no

contractual relationship arose between the parties. *See also Quintero v. Geico Marine Ins. Co.*, 389 F. Supp. 3d 1153, 1161 n.3 (S.D. Fla. 2019), *aff'd*, 983 F.3d 1264 (11th Cir. 2020). Thus, Astonbluwaves' claims for breach of contract, declaratory judgment, breach of contractual obligation of good faith and fair dealing, and breach of the duty of *uberrimae fidei* fail as a matter of law. Astonbluwaves' equitable estoppel claim also fails because "*uberrimae fidei* does not permit the use of principles of waiver and estoppel to provide coverage where there has been a material misrepresentation on the [insurance] application." *See Fraser*, 211 F.3d at 1362 n. 2 (quoting *Certain Underwriters v. Giroire*, 27 F. Supp. 2d 1306, 1310 (S.D. Fla. 1998)). Accordingly, Astonbluwaves' counterclaims fail as a matter of law, and Clear Spring is entitled to judgment in its favor.

## IV. CONCLUSION

Based on the foregoing, the undersigned hereby **RECOMMENDS** that Clear Spring's Motion for Summary Judgment, ECF No. 74, be **GRANTED** and that final judgment in this case be entered in favor of Clear Spring. Because the remaining pending motions in this case (ECF Nos. 65 and 93) are rendered moot by the grant of summary judgment in Clear Spring's favor, those motions should additionally be denied as moot.

Within fourteen (14) days from the date of receipt of this Report and Recommendation, that is, **by no later than February 7, 2024**, the parties shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Kathleen M. Williams, United States District Judge. Failing to file timely objections will bar a *de novo* determination by the District Judge of any issue addressed in the Report and Recommendation, will constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions," and will only allow appellate review of the district court order "for plain error if necessary in the interests of justice." 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1); *Thomas v. Arn*,

474 U.S. 140 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020).

**RESPECTFULLY RECOMMENDED** in chambers in Miami, Florida, this 24th day of January 2024.

_____
EDUARDO I. SANCHEZ
UNITED STATES MAGISTRATE JUDGE

cc: Hon. Kathleen M. Williams
     Counsel of Record
     Astonbluwaves LLC (via U.S. Mail)